UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA LIBERTI,           ) | |
|       Plaintiff           ) | |
|                           ) | |
| v.                       ) | Civil Action No. 22-30100-KAR |
|                           ) | |
| MARTIN O'MALLEY,         ) | |
| Commissioner of Social   ) | |
| Security Administration,[1]  ) | |
|       Defendant           ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR ORDER
REVERSING THE COMMISSIONER'S DECISION AND DEFENDANT'S MOTION
TO AFFIRM THE COMMISSIONER'S DECISION
(Dkt. Nos. 23 & 28)

ROBERTSON, U.S.M.J.

I.     Introduction

Plaintiff Linda L. ("Plaintiff") started receiving Title II disability benefits effective May 2, 1989 (A.R. 69).[2] Beginning in or around 2001, she re-entered the workforce on a part-time basis at CVS (A.R. 70). She began work at Mercy Hospital in 2004, and, in 2009, obtained employment at Baystate Medical Center (A.R. 70). In September 2010, the Social Security Administration ("SSA") notified her that, due to her work at the substantial gainful activity level ("SGA") while receiving disability benefits, she had been overpaid benefits in the amount of $61,051.00 (A.R. 69) and was expected to repay the funds. Her requests to the SSA for waiver of the repayment obligation were unsuccessful. Now before the court is her motion seeking

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of the Social Security Administration, is substituted for Kilolo Kijakazi, former Acting Commissioner of the Social Security Administration.

[2] The contents of the administrative record are cited to as "A.R.," found at docket number 18, using the page number in the upper right-hand corner of the documents.

1

reversal of a decision by a second Administrative Law Judge ("ALJ") affirming the SSA's decision to deny Plaintiff's request for a waiver of her repayment obligation (Dkt. No. 23).  The Commissioner has filed a motion to affirm his decision (Dkt. No. 28).  The parties have consented to this court's jurisdiction (Dkt. No. 9).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons explained below, the court GRANTS the Commissioner's motion and DENIES Plaintiff's motion.

    II.    <u>Procedural History</u>

The procedural history is not in dispute.  In September 2010, on completion of a work continuing disability review, the SSA notified Plaintiff that she had been overpaid $61,051.00 in benefits for the period May 2006 through August 2010.  In January 2011, Plaintiff requested a waiver of the repayment obligation.  After a review of the file and a conference with Plaintiff, the SSA denied Plaintiff's waiver request (A.R. 5).  Plaintiff asked for a hearing before an ALJ, and one was held on August 16, 2012 (A.R. 69).  In a decision issued on October 12, 2012, the ALJ found that Plaintiff was not without fault for the overpayment and upheld the SSA's denial of Plaintiff's request for a waiver of the repayment obligation (A.R. 74).  On December 14, 2012, Plaintiff filed a request for review of the ALJ's decision.  On June 3, 2014, the Appeals Council denied review of the ALJ's unfavorable decision (A.R. 5).[3]

---

[3] On May 23, 2013, Plaintiff filed a motion for reconsideration of the SSA's decision concerning her repayment obligation.  The Appeals Council dismissed the request for reconsideration because the ALJ had issued an unfavorable decision that the Appeals Council had upheld.  After Plaintiff requested a hearing on the Appeals Council's denial of her motion for reconsideration, an ALJ dismissed the request for a hearing because there was no indication in the record that the Appeals Council had issued a substantive ruling on Plaintiff's motion for reconsideration (A.R. 5).  This procedural detour is not relevant to the final decision by the Commissioner that preceded, and is the basis for, the filing of the instant complaint (A.R. 15-16).

Plaintiff filed suit in the United States District Court for the District of Massachusetts challenging the SSA's final decision. *See Liberti v. Colvin*, Civil Action No. 14-30132-MGM, 2016 WL 3350992 (D. Mass. June 15, 2016). The court remanded the case to the Commissioner for further proceedings, noting that the Commissioner may waive repayment when a claimant relies "on erroneous information from the SSA in reaching her decision to accept the overpayment," *id.* at *3 (citing *Tefera v. Colvin*, 61 F. Supp. 3d 207, 212 (D. Mass. 2014), and that among the kinds of erroneous information a claimant might reasonably rely on are "'[t]he continued issuance of benefit checks to [the claimant] after [the claimant] sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led [the claimant] to believe in good faith that [the claimant] was entitled to checks subsequently received' and 'erroneous information from an official within the [SSA].'" *Id.* (alterations in original) (quoting 20 C.F.R. § 404.510(b), (g)). The court remanded the case on the ground that the SSA had not given adequate consideration to the communications between Plaintiff and the SSA before and during the overpayment and the extent to which Plaintiff may have relied on those communications in continuing to accept benefits while she was working. *Id.* at *4.

Following the District Court's remand decision, the Appeals Council directed that an ALJ hold a new hearing because the first ALJ's decision "was incorrect in its characterization of the overpayment at issue because it was an entitlement overpayment and not a deduction overpayment" and the ALJ "did not cite to the correct regulation in evaluating … fault and waiver of recovery of the overpayment" (A.R. 5). A second hearing, before a different ALJ, was held on April 26, 2019 (A.R. 26-49). On July 31, 2019, the ALJ issued a second unfavorable decision, finding that Plaintiff had been overpaid within the meaning of the Social Security Act

("the Act") and that Plaintiff had not shown that recovery of the overpayment should be waived (A.R. 16). The Appeals Council denied relief (A.R. 1-9), and this appeal followed.

    III.    <u>Standard of Review and Legal Standards</u>

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by substantial evidence and whether the correct legal standard was used.'" *Coskery v. Berryhill*, 892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001)). The court reviews questions of law *de novo, id.*, but "the ALJ's findings [of fact] shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)). It is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See id*. That said, the ALJ may not ignore evidence or misapply the law. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The Act "defines 'disability' as the 'inability to engage in any substantial gainful activity' because of a qualifying physical or mental impairment.'" *Fitschen v. Kijakazi*, 86 F.4th 797, 799 (7th Cir. 2023) (quoting 42 U.S.C. § 423(d)(1)(A)). "A trial work period, authorized under § 422(c), is 'a period during which [a claimant] may test [his] ability to work and still be considered disabled.'" *Id.* (alterations in original) (quoting 20 C.F.R. § 404.1592(a)). "When a trial work period ends, a recipient may continue to work for an additional 36 months without

4

losing benefits but *only* if his monthly earnings do not exceed the level of 'substantial gainful activity' as defined in the Act and regulations." *Id.* (citing 42 U.S.C. § 423(a)(1); 20 C.F.R. §§ 404.1572-74, 1492a(a)). "The SSA has a statutory duty to recover overpayments but may waive recovery if the recipient was without fault and other criteria are met." *Id.* (citing 42 U.S.C. § 404(a)(1), (b)(1)). In determining whether a claimant has engaged in substantial gainful activity, the SSA does not take into account income that is not directly related to a claimant's productivity. If a claimant's earnings are being subsidized, the SSA excludes the amount of the subsidy from the calculation of a claimant's earnings. In other words, "'where work is done under special conditions, [the Administration will] only consider the part of [the] pay which [the individual] actually *earn*[*s*].'" *Setian v. Callahan*, 973 F. Supp. 46, 48 & n.2 (D. Mass. 1997) (alterations in original) (quoting 20 C.F.R. § 404.1574(a)(2)).

      To qualify for a waiver of repayment, Plaintiff, who has the burden of proof, must satisfy two criteria: she must show that she was "without fault" for the overpayment, and that recovery of the overpayment would either "defeat the purpose" of disability benefits or "be against equity and good conscience." 42 U.S.C. § 404(b)(1); *see also Fitschen*, 86 F.4th at 805 (the claimant has the burden of showing that both requirements for a waiver of repayment have been met); *Theresa R. v. Kijakazi*, No. 2:22-cv-00145-LEW, 2023 WL 166433, at *1 (D. Me. Jan. 11, 2023), *Report & Recommendation adopted sub. nom. Theresa R. v. Soc. Sec. Admin. Comm'r*, 2:22-CV-00145-LEW, 2023 WL 1316625 (D. Me. Jan. 31, 2023) (same); *Tefera*, 61 F. Supp. 3d at 211 (same).

      SSA regulations provide that fault on the part of a recipient depends on whether the overpayment was the result of:

    (a) [a]n incorrect statement made by the individual which he knew or should have known to be incorrect; or

5

> (b) [f]ailure to furnish information which he knew or should have known to be material; or
>
> (c) … acceptance of a payment which he either knew or should have been expected to know was incorrect.

20 C.F.R. §§ 404.507(a)-(c). "'If a claimant fails to establish that [s]he was without fault, analysis of the second prong is unnecessary.'" *Tefera*, 61 F. Supp. 3d at 211 (alteration in original) (quoting *Yankun v. Barnhart*, 473 F. Supp. 2d 147, 150 (D. Mass. 2006)). "Reliance on erroneous information from an SSA official also may be grounds for waiver of repayment of an overpayment." *Id.* at 212 (citing *Beaudry v. Sec'y of HHS*, No. 90-30093-F, 1991 WL 319161, at *4, *7-8 (D. Mass. Sept. 24, 1991)); *see also* 20 C.F.R. § 404.510a. "[S]omeone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, *and* recovery would be against equity and good conscience." *Gladden v. Callahan*, 139 F.3d 1219, 1223 (8th Cir. 1998). However, "[e]ven though the SSA may have been at fault in making an overpayment, that fact does not relieve the overpaid individual from liability for repayment if the individual is not without fault." *Stevens v. Colvin*, 232 F. Supp. 3d 605, 612 (D. Del. 2017); *see also Mehalshick v. Comm'r Soc. Sec.*, 609 F. App'x 710, 712-13 (3d Cir. 2015) (per curiam) (unpublished) (same).

    IV.    <u>Decisions of the ALJ and the Appeals Council</u>

The ALJ found that Plaintiff was overpaid in the amount of $61,051.00 during the period from May 2004 to August 2010 (A.R. 18). The Appeals Council corrected an error in this determination, agreeing that Plaintiff was overpaid in the amount of $61,051.00, but finding that the period of overpayment was from May 2006 through August 2010 (A.R. 4). In its review of the second ALJ's unfavorable decision, the Appeals Council noted that Plaintiff received two notices of overpayment. One notice, dated August 17, 2010, informed her that she had been

6

overpaid $2,967.00 in benefits for the period from May 2004 through July 2004.  Plaintiff refunded this amount in full to the SSA (A.R. 8).  The second notice, dated September 6, 2010, informed her that she had been overpaid $61,051.00 for the period from May 2006 through August 2010 (A.R. 8).  This is the repayment notice that remains at issue.

      Relying in part on evidence introduced at the first hearing, following the second hearing, the ALJ found that Plaintiff became entitled to Title II benefits as of May 2, 1989.  She returned to work at CVS in 2001, obtained certification as a pharmacy technician, and was subsequently employed at Mercy Hospital, then at Baystate Medical Center (A.R. 18).  Plaintiff was informed in an August 12, 2003, letter from the SSA that she had completed her trial work period – meaning the period during which she could work, even at an SGA level, and still collect disability benefits – in February 2003 (A.R. 18).  The letter informed Plaintiff that she had to inform the SSA right away about any changes that might affect her right to benefits, and that, if she did not do so, she might have to repay any benefits which were not due (A.R. 19).  The letter advised her about the extended 36-month period of eligibility during which she could work and receive benefits only for months when her earnings did not exceed the SGA level (A.R. 19).  According to the ALJ, the SSA letter informed Plaintiff that she should let the SSA know if certain circumstances occurred since her last report, including going to work, any changes in duties or pay, and starting to pay for work expenses related to disability.  She was informed that the SSA would use this information to decide if her disability payments should be stopped or changed because of her work.  The ALJ found that, "at a minimum, [Plaintiff] should have known that earnings from often full-time work activity would affect her benefits based on the correspondence from the Administration dated August 12, 2003."  The ALJ further found that Plaintiff sought to report her work to the SSA in early July 2005, and did so in late July 2005,

and that, in January 2006, an SSA employee informed Plaintiff that she had exceeded the income allowance and would likely have to repay the overpaid amount. Thereafter, the ALJ found, Plaintiff continued to collect disability benefits while working (A.R. 19).

As to the contention that the SSA misled Plaintiff by continuing to pay her benefits, the ALJ acknowledged and considered that, after her 2006 communications with the SSA employee who warned Plaintiff that she might no longer be eligible for benefits, Plaintiff had continued to receive letters announcing benefit increases for five years while she continued working. The ALJ did not credit the testimony of Plaintiff's husband that they contacted the SSA some fifty times about the possible overpayment, finding that "the record does not support this claim" (A.R. 20). The ALJ found that Plaintiff "knew (or should have known) that she was not entitled to collect benefits while being employed at a certain level, given the implication of such actions as explained by the Administration in August 2003 and January 2006" (A.R. 19).

Addressing the contentions Plaintiff raised, through counsel, in her request for review by the Appeals Council, the Council rejected Plaintiff's contention that the second ALJ had not complied with the District Court's direction to consider the implications of 3½ years of continuing benefits payments to Plaintiff after she was advised in January 2006 that she had likely been overpaid. The Appeals Council accepted the ALJ's finding that Plaintiff had not communicated her earnings history to the SSA after January 2006, concluding that there was no evidence that Plaintiff "made any attempts to have the Social Security Administration stop her benefits prior to the initiation of the work CDR determination completed in September 2010 that began in July 2007" (A.R. 8). The Appeals Council further noted that it had examined the evidence Plaintiff submitted to show that she had kept the SSA informed about her earnings as required and determined that these communications related to her 2012 request to reinstate her

8

disability benefits which was unrelated to her request for a waiver of her repayment obligation of an overpayment (A.R. 7).

The ALJ also addressed the contention that Plaintiff did not earn at the SGA level between 2006 and 2010 because she was physically limited in her ability to work, such that her employment was subsidized by her employers. Baystate Medical Center reported that Plaintiff's productivity was approximately 60% that of the productivity of other employees. The ALJ found that Plaintiff's earnings were still at the SGA level if a 40% subsidy or reduction was applied to her Baystate earnings during the relevant period (A.R. 20). While Plaintiff reported that her productivity was also limited by her physical impairments while she was employed by Mercy Hospital, that facility had not retained records concerning her employment and did not verify any accommodation or reduction in productivity. The ALJ found no basis for applying the 60% productivity rating reported by Baystate to Plaintiff's Mercy Hospital earnings in the absence of confirmation from the employer (A.R. 20).

V.     Discussion

Plaintiff advances three primary arguments for why the court should reverse the ALJ's decision. First, she argues that the court should reject the ALJ's finding that Plaintiff was not without fault, relying on the regular communications from the SSA informing Plaintiff of the increase in her disability benefits as a basis for contending that Plaintiff was without fault because she relied on erroneous communications from the SSA in continuing to accept and spend the disability benefits she received (Dkt. No. 24 at 4-8). Second, Plaintiff contends that the ALJ erred in concluding that she earned at an SGA level from 2006 through 2010 because she continued to suffer from physical limitations and her employers accommodated her physical limitations, thereby subsidizing her employment (Dkt. No. 32 at 3-5, 8-9). Third, Plaintiff makes

9

an apparent equitable argument that the SSA should be precluded from recouping any overpayment of benefits because it is bound by the regulatory provision on which District Court Judge Mark G. Mastroianni relied and was not entitled to continue collecting on the claimed overpayment after Judge Mastroianni remanded the case to the SSA based on his finding that the first ALJ's decision was not based on substantial evidence (Dkt. No. 24 at 5). The court addresses these contentions in turn.

   (1) The ALJ's finding that Plaintiff was not without fault is supported by substantial evidence.

The ALJ found that Plaintiff knew or should have known that she was not entitled to continue receiving disability benefits. Plaintiff was notified of the completion of her trial work period in August 2003. The SSA correspondence explained what would happen with respect to her entitlement to benefits based on work income after completion of the trial work period (A.R. 23). She was then notified in January 2006 by an SSA employee that her earnings in 2005 had exceeded income allowance and she likely would be required to make a repayment to the SSA. The ALJ concluded that it was reasonable to conclude that Plaintiff knew or should have known based on these communications that she was not entitled to collect disability benefits while working. The fact of these communications is not disputed. The court understands why Plaintiff might rely on the SSA's continued payment of benefits as misleading, but she has not pointed to evidence of any affirmative misrepresentations by the SSA that she was entitled to continue receiving benefits notwithstanding her employment and her earnings. Further, when the ALJ asked Plaintiff whether, when she received the notices of annual benefit increases, she read the accompanying information that explained her benefits and responsibilities, including the responsibility to report work activity, Plaintiff conceded that she never paid any attention to that information (A.R. 34). Mr. Liberti, Plaintiff's spouse, testified that every time SSA asked the

couple for information, they provided financial information. There is evidence in the record that Plaintiff informed the SSA in 2008 and 2009 that she was working, how many hours per week she was working, and what her salary was (A.R. 20). There was no evidence, however that Plaintiff or her spouse asked the SSA about the continuing payment of benefits between 2007 and 2010 when the SSA notified them of the overpayment and the reimbursement obligation. The ALJ did not credit Mr. Liberti's testimony that the couple contacted the SSA some 50 times about the overpayment. Because credibility determinations are the province of the ALJ, *see Applebee*, 744 F. App'x at 6, this court is bound by the ALJ's finding that there was no credible evidence in this record that Plaintiff sought to report and adjust the overpayment before the SSA notified her of her sizeable repayment obligation in September 2010.

"[T]he SSA is a massive enterprise, and mistakes will occur." *Smith v. Berryhill*, 587 U.S. 471, 482 (2019) (footnote omitted). Courts have consistently held that someone like Plaintiff, who received accurate information from the SSA, did not inquire about her continued receipt of benefits, and did not receive affirmatively misleading information from the SSA, is not entitled to rely on the SSA's error in continuing to make payments. The "should have known" standard is protective of the SSA's recoupment obligation, and the ALJ's finding that Plaintiff, at a minimum, should have known that she was receiving benefits to which she was not entitled is consistent with decisions in this jurisdiction and others. In *Van Buskirk v. Shalala*, 842 F. Supp. 1477 (D. Mass. 1994), the SSA notified the plaintiff by mail that he had completed his trial work period and if he continued working, his benefits would cease in September 1981. Plaintiff continued to work and the SSA continued to issue him disability benefits after September 1981. *Id.* at 1478. The court found that plaintiff was not without fault and was required to repay benefits to which he was not entitled because he received the letter informing him that he would

no longer be eligible for benefits if he continued working after the completion of his trial period. *Id.* at 1479. In *Beaudry*, 1991 WL 319161, the court considered whether reliance on the continued payment of benefits was sufficient to meet the requirement that a claimant show she was without fault because she relied on erroneous information from the SSA. *Id.* at *7. The court held that to meet this criterion, a claimant "must make actual inquiry with respect to either the law or an entitlement to benefits under the law" and receive a misleading response from an SSA employee in response to that inquiry. *Id.* at *8 (citing *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1044-45 (2d Cir. 1984); *Dorman v. Harris*, 633 F.2d 1035, 1037 (2d. Cir. 1980); *Priolo v. Sec'y of Health & Human Servs.*, 645 F. Supp. 39, 40 (E.D.N.Y. 1986); *Cucuzzella v. Weinberger*, 395 F. Supp. 1288, 1294 (D. Del. 1975)).

Decisions from other jurisdictions are consistent with the cases described above. *See Mehalshick*, 609 F. App'x at 712-13 (even if the SSA may have been at fault in continuing to make disability payments to the plaintiff, she was not without fault where she had received information from the SSA that her trial work period would only last nine months, and she continued to work beyond that nine month period while also receiving benefits); *Stevens*, 232 F. Supp. 3d at 612-13 (holding that, notwithstanding the plaintiff's intellectual challenges, he was not without fault and was required to repay benefits when he acknowledged that he understood the program rules and accepted benefits when he knew he was not entitled to them); *Feenster v. Colvin*, 220 F. Supp. 3d 123, 125, 128 (D.D.C. 2016) (holding that plaintiff was not without fault and was required to repay $89,802.00 in benefits where he testified that he understood that the trial work period would give him an opportunity to try and return to work, he would be entitled to benefits until certain conditions were satisfied, and he believed the SSA would let him know when those conditions were met). In *Feenster*, the court upheld the SSA's decision where, the

12

court stated, "Plaintiff continued to collect his undue benefits for five years, unreasonably giving himself the benefit of the doubt when faced with arguably conflicting information regarding his eligibility." *Id.* at 129.

The court finds there is substantial evidence supporting the ALJ's finding that Plaintiff was "not without fault" as that term has been interpreted by numerous federal courts. The SSA informed Plaintiff about the end of her trial period and the conditions under which she could work and remain eligible for benefits thereafter. She continued to work and accept disability benefits, apparently disregarding the SSA's communications about program rules, until the SSA notified her, in 2010, of her repayment obligation. In similar cases, numerous courts have affirmed that a claimant situated as Plaintiff is situated was not without fault in continuing to accept disability benefits. Thus, this aspect of the ALJ's decision is supported by substantial evidence. Further, "[b]ecause the finding that Plaintiff was at fault is supported by substantial evidence, the court need not address the issue of whether recovery of the overpayment would defeat the purpose of Title II or be against equity and good conscience." *Stevens*, 232 F. Supp. 3d at 613.

2. There is substantial evidence in the record supporting the ALJ's finding that Plaintiff's work was not subsidized.

The burden is on Plaintiff to show that her work was subsidized to an extent that it did not qualify as SGA during the relevant period. *See Setian*, 973 F. Supp. at 49. She presented no evidence other than her own testimony that she did not perform the full, or close to the full, range of activities she was required to perform while employed at CVS and at Mercy Hospital. So far as appears from the record, this is not a case in which Plaintiff was employed through a program designed to enable individuals with disabilities to work. *Contrast id.*, 973 F. Supp. at 48 (relying in part on the fact that the plaintiff was employed under a federally funded program for the

13

disabled in which his duties were specially selected to match his physical limitations as a basis for concluding that the ALJ's finding of fault was not supported by substantial evidence). The ALJ was not required to credit Plaintiff's testimony about restrictions on the work she performed and did not do so (A.R. 20). Accepting the information provided by Baystate Medical Center ("BMC"), the ALJ found that even if Plaintiff's work at BMC was subsidized to the extent of 40% because her productivity was only 60% of that of her colleagues, her earnings exceeded the amount she could have made while still being entitled to collect benefits (A.R. 21). To the extent Plaintiff claims this amount had to be calculated on a monthly rather than an annual basis, it was her responsibility to show that there were months during which she worked at BMC and her monthly earnings were sufficiently low to qualify her to receive benefits for that month. The record is devoid of such evidence.

In summary. substantial evidence supports the ALJ's findings that Plaintiff was able to perform most, if not all, of the tasks required for her positions at CVS and Mercy Hospital and that, taking into account her comparatively low rate of productivity, her earnings at BMC still qualified as SGA (A.R. 21).

3.   The ALJ complied with the directives of the Appeals Council and the District Court's directive on remand.

"Deviation from [a district] court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989); *see also Simpson v. Colvin*, 2 F. Supp. 3d 81, 91 (D. Mass. 2014) (collecting cases). Plaintiff appears to claim that the second ALJ's decision, which was accepted by the Appeals Council in relevant part, deviated from the District Court's remand order. The court disagrees.

The ALJ who issued the first decision in this case did not identify the statutory and regulatory provisions on which he relied in concluding that Plaintiff was not without fault for purposes of deciding whether her repayment obligation should be waived (A.R. 69-74). In his opinion remanding the case to the SSA for further proceedings, Judge Mastroianni pointed to – among other legal authorities – 20 C.F.R. § 404.510(b), (g), which, he observed, provide that "[a]mong the types of information a claimant may have relied upon are '[t]he continued issuance of benefit checks to [the claimant] after [the claimant] sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of the checks led [the claimant] to believe in good faith that [the claimant] was entitled to checks subsequently received' and 'erroneous information from an official within the [SSA]'" *Liberti*, 2016 WL 3350992, at *3 (second through fifth alterations in original) (quoting 20 C.F.R. § 404.510(b), (g)). Judge Mastroianni did not explicitly rule that this regulatory provision applied to Plaintiff's case.

On remand, the Appeals Council noted that Plaintiff's case did not involve a deduction overpayment, *see generally Splude v. Apfel*, 165 F.3d 85, 92-93 (1st Cir. 1999) (identifying some income sources which may be deducted from a claimant's disability benefits and discussing the SSA's recoupment process in the event of a deduction overpayment), but instead arose from an overpayment of benefits to which Plaintiff was not entitled because she had performed work at an SGA level. The Appeals Council directed the ALJ to whom the case was remanded to consider Plaintiff's communications with the SSA, applying the regulation which governs entitlement overpayments (A.R. 209). To the extent Plaintiff is suggesting that the law of the case doctrine precluded the SSA from complying with the mandate pursuant to the applicable regulatory provision, "the administrative agency, on remand from a court, [is required] to

15

conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998); *see also United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993) ("the so-called 'mandate rule' generally requiring conformity with the commands of a superior court on remand, is simply a specific application of the law of the case doctrine and, as such, is a discretion-guiding rule, subject to an occasional exception in the interests of justice"). On remand, the SSA was entitled to reconsider the case relying on the regulatory provisions that apply to an entitlement overpayment.

Judge Mastroianni's remand order directed the SSA to consider Plaintiff's communications with the SSA prior to and during the period of overpayment, and whether regulations which address a claimant's reliance on continued payments from the SSA as a form of erroneous communication that may excuse an obligation to repay, should apply to excuse Plaintiff's obligation to repay. *Liberti*, 2016 WL 3350992, at *3, *4. Following remand, the ALJ addressed each of the issues raised by the District Judge. She determined the form of overpayment Plaintiff had received and considered Plaintiff's waiver request in light of the applicable regulations (A.R. 21). She considered the content, timing, and import of the SSA's communications with Plaintiff prior to and during the overpayment, taking note of the written communication in 2003 notifying Plaintiff about the end of her trial work period and explaining the program rules thereafter. She further elicited testimony from Plaintiff that Plaintiff did not pay any attention to the information the SSA sent out each year when she was notified of the annual cost-of-living increases to her disability benefits (A.R. 34). The ALJ found that the SSA had adequately communicated the program rules to Plaintiff – orally and in writing – such that she knew or should have known that she could not work and collect disability benefits at the

same time (A.R. 19). While there was evidence that Plaintiff submitted accurate work activity reports to the SSA while she was receiving benefits to which she was not entitled, there was no evidence that she or her spouse initiated an inquiry about her continuing entitlement to disability benefits or received misleading information from anyone employed by the SSA. According to Plaintiff's husband, they assumed that if the SSA was increasing Plaintiff's benefits, everything was in order (A.R. 41-42). Where, as in this case, the SSA has provided a claimant with written information accurately setting out the program details, that explanation does not warrant a finding of no fault. *See Feenster*, 220 F. Supp. 3d at 129. In compliance with Judge Mastroianni's remand order, the ALJ properly considered Plaintiff's communications with the SSA, relying on the regulatory provisions that apply when the SSA must determine whether an individual is without fault for an entitlement overpayment. *See* 20 C.F.R. §§ 404.507, 404.510a; *contrast* 404 C.F.R. §§ 404.510, 404.511.

The court shares Plaintiff's concern that the SSA continued to collect the overpayment by deductions from her disability benefit payments after Judge Mastroianni remanded the case to the SSA for further proceedings consistent with his opinion. *See Liberti*, 2016 WL 3350992, at *4. Plaintiff represents, without contradiction from the SSA, that by late December 2023, the SSA had recouped more than $50,000.00 of the $61,051.00 overpayment of benefits by making deductions from Plaintiff's reinstated disability benefits payments (A.R. 24 at 2). However, while the SSA has not offered any justification for this action, which seems inconsistent with Judge Mastroianni's intentions on remand, Plaintiff has not pointed to any authority that would authorize this court to grant her some form of equitable relief, such as the determination she requests that the SSA should be satisfied with its recoupment to date (A.R. 24 at 8).

    VI.    <u>Conclusion</u>

For the forgoing reasons, Plaintiff's Motion for Order Reversing the Commissioner's Decision (Dkt. No. 23) is DENIED and the Defendant's Motion to Affirm the Commissioner's Decision (Dkt. No. 28) is GRANTED.  The Clerk's Office is directed to close the case on the court's docket.

It is so ordered.

Dated: August  7, 2024                                     <u>Katherine A. Robertson</u>
                                                           KATHERINE A. ROBERTSON
                                                           U.S. MAGISTRATE JUDGE